**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **SUNNY HANDICRAFT (H.K.) LTD.** | ) | |
| **and BIN TEH HANDICRAFT** | ) | |
| **(SHENZHEN) CO. LTD.,** | ) | |
| | ) | |
| **Plaintiffs/Counter-Defendants,** | ) | 14 C 1512 |
| | ) | |
| **v.** | ) | **Judge John Z. Lee** |
| | ) | |
| **ENVISION THIS!, LLC,** | ) | |
| | ) | |
| **Defendant/Counter-Plaintiff,** | ) | |
| | ) | |
| **and** | ) | |
| | ) | |
| **WALGREEN CO.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Sunny Handicraft (H.K.) Ltd. ("Sunny") and Bin Teh Handicraft (Shenzhen) Co. Ltd. ("Bin Teh") are foreign corporations in the business of manufacturing and exporting holiday decorations and other seasonal merchandise. Around 2006 or 2007, Plaintiffs began working with Defendant Envision This!, LLC ("Envision"), a Florida-based company that sources goods from overseas factories for sale to U.S. retailers. For several years, Plaintiffs and Envision worked together to arrange regular shipments of merchandise to various U.S. retailers, including to Defendant Walgreen Co. ("Walgreens").

In 2013, however, the parties' business relations soured. For their part, Plaintiffs assert that Envision and Walgreens have wrongfully withheld payment of over $3 million owed to Plaintiffs for goods shipped during that year. Plaintiffs have accordingly brought claims against Envision and Walgreens for breach of contract and unjust enrichment, as well as additional claims against Envision for defamation, fraud, and breach of fiduciary duty. In response,

Envision has filed counterclaims against Plaintiffs for defamation, breach of contract, unjust enrichment, tortious interference with economic advantage, and breach of implied warranty of merchantability.

Each party has filed a motion for summary judgment. For the reasons provided herein, Plaintiffs' motion for partial summary judgment [151] is granted in part and denied in part. Envision's motion for partial summary judgment [161] is also granted in part and denied in part. Walgreens's motion for summary judgment [164] is denied in its entirety.

## <u>Background</u>[1]

Sunny is a Hong Kong corporation with its principal place of business in Hong Kong. Pls.' LR 56.1(a)(3) Stmt. ¶ 1, ECF No. 153. Bin Teh is a Chinese corporation with its principal place of business in Shenzhen, China. *Id.* ¶ 2. Bin Teh manufactures goods that Sunny then ships to retailers. Envision's LR 56.1(a)(3) Stmt. ¶ 3, ECF No. 163. Although Sunny and Bin Teh are separate companies, they are operated by the same general manager, Daniel Huang. *Id.* ¶¶ 4–5. Envision is a Florida limited liability company with its principal place of business in Miami Beach, Florida. Pls.' LR 56.1(a)(3) Stmt. ¶ 3. Its sole members, Beth Edwards and Robert Hetzler, are both Florida residents. *Id.* Walgreens is an Illinois corporation with its principal place of business in Deerfield, Illinois. *Id.* ¶ 4.

Plaintiffs are in the business of manufacturing and shipping seasonal merchandise for U.S. retailers. *Id.* ¶ 7. Around 2006 or 2007, Plaintiffs began working with Envision to facilitate sales of their merchandise. *Id.* The parties dispute which services Envision provided in connection with these sales. According to Plaintiffs, Envision's role was to set up appointments with retailers on Plaintiffs' behalf, communicate with buyers regarding price quotes and samples,

---

[1] The following facts are undisputed except where noted.

and collaborate with Plaintiffs in designing samples and artwork for the packaging of some of Plaintiffs' goods. *Id.* ¶ 8. Envision rejects this characterization of the services it performed. Envision's LR 56.1(b)(3) Stmt. ¶ 8, ECF No. 171. Rather, according to Envision, it provided Plaintiffs with product development, trend tracking, database management, and invoice management services in the course of sourcing goods on retailers' behalf. *Id.*

From 2007 to 2013, Walgreens was one of the U.S. retailers who purchased Plaintiffs' merchandise. *Id.* ¶ 16. Envision played a role in facilitating these purchases, but the parties dispute how Envision's role is best characterized. According to Plaintiffs, Envision "worked for, and was compensated by, Plaintiffs for serving as Plaintiffs' sales representative" in these transactions. Pls.' LR 56.1(b)(3) Stmt. Resp. Envision ¶ 8, ECF No. 176. For its part, Envision asserts that it worked not for Plaintiffs but instead for Walgreens as Walgreens's vendor, contracting with Walgreens for the sale of merchandise and in turn subcontracting with Plaintiffs for the manufacture of this merchandise. Envision's LR 56.1(b)(3) Stmt. ¶ 16.

Plaintiffs and Envision had an agreement governing the compensation structure by which Plaintiffs paid Envision for its services in facilitating sales of Plaintiffs' goods. Pls.' LR 56.1(a)(3) Stmt. ¶ 9. This agreement governed all sales of Plaintiffs' goods to U.S. retailers, including sales to Walgreens. *See id.* ¶¶ 9, 16. Under the terms of the agreement, Plaintiffs paid Envision (1) an annual fee of $10,000, (2) a commission consisting of a percentage of the price of each item Envision helped Plaintiffs to sell, and (3) "certain expenses, including the amounts Envision paid for samples, courier charges, hotel fees in Asia, and third-party translation services." *Id.* ¶ 10. When one party owed money to the other at the end of the year, Plaintiffs and Envision settled their accounts through a "truing up" process, either paying the other party

any outstanding amount owed or carrying any outstanding balance as a credit into the following year. *Id.* ¶ 14.

Although Plaintiffs and Envision do not dispute these basic terms of their agreement, they dispute whether the agreement contained certain additional terms. For example, Envision claims (and Plaintiffs deny) that Plaintiffs agreed to separately compensate Envision for the cost of its product development, trend tracking, and database management services, as well as for artwork that Envision developed to market Plaintiffs' goods. *See* Envision's LR 56.1(b)(3) Stmt. ¶¶ 10, 12; Pls.' Reply Envision's LR 56.1(b)(3) Stmt. ¶¶ 89–92, ECF No. 188. In addition, Plaintiffs claim (and Envision denies) that Envision was responsible for coordinating with Walgreens to ensure that Sunny received payment for the merchandise that Plaintiffs manufactured and shipped. Envision's LR 56.1(b)(3) Stmt. ¶ 18.

From 2007 to 2012, in order to coordinate shipments of Plaintiffs' goods for sale to Walgreens, Envision regularly submitted Import Buying Confirmation Forms to Walgreens. Pls.' LR 56.1(a)(3) Stmt. ¶ 18. Walgreens paid for the goods corresponding to each Confirmation Form by issuing letters of credit. *Id.* ¶¶ 18–19. From 2007 to 2012, the Confirmation Forms that Envision submitted to Walgreens regarding Plaintiffs' goods always listed Sunny as the entity to be named as the beneficiary for the letters of credit. *Id.* ¶ 18. Accordingly, for each shipment of goods sold to Walgreens from 2007 to 2012, Plaintiffs received payment in the form of letters of credit issued by Walgreens. *Id.* ¶¶ 18–19.

Business did not go as usual in 2013. That year, Walgreens initiated a transaction ("the 2013 Transaction") for the purchase of Christmas decorations manufactured by Plaintiffs. *Id.* ¶ 22. The purchased merchandise had a face value of just under $3.5 million. *Id.* When Envision sent the Confirmation Forms to Walgreens for the 2013 Transaction, however, the

forms listed Envision—not Sunny—as the entity to be named as the beneficiary of Walgreens's letters of credit. *Id.* ¶ 23. According to Plaintiffs, their general manager, Daniel Huang, had previously e-mailed Envision copies of Confirmation Forms listing Sunny as the beneficiary for the 2013 Transaction, but Envision later altered the forms to list itself as the beneficiary without Plaintiffs' knowledge. *Id.* Envision denies this accusation, maintaining instead that Plaintiffs agreed to designate Envision as the beneficiary for the 2013 Transaction and that Plaintiffs were aware of this arrangement no later than December 2012. Envision's LR 56.1(b)(3) Stmt. ¶¶ 23, 96.

Based on the information provided in the Confirmation Forms for the 2013 Transaction, Walgreens issued three transferable letters of credit listing Envision as the beneficiary. Pls.' LR 56.1(a)(3) Stmt. ¶ 24. On August 8, 2013, Envision notified Plaintiffs that these letters of credit had been issued. *Id.* ¶ 25. According to Plaintiffs, this was the first time they learned that the letters of credit listed Envision rather than Sunny as the beneficiary. *Id.* Plaintiffs requested that Envision transfer the letters of credit to Sunny, but Envision did not do so. *Id.* Envision later drew down about $3.069 million from the letters of credit and deposited the money into its bank account. *Id.* ¶ 30.

On August 20, 2013, Huang called Walgreens's buying representative, Hadieh Hasan, to request that Walgreens issue a new letter of credit listing Sunny as the beneficiary. *Id.* ¶ 35. Envision and Walgreens assert (while Plaintiffs deny) that Huang told Hasan during this conversation that Sunny would not ship the merchandise for the 2013 Transaction unless Walgreens issued a new letter of credit. Pls.' LR 56.1(b)(3) Stmt. Resp. Envision ¶ 24; Pls.' LR 56.1(b)(3) Stmt. Resp. Walgreens LR 56.1 Stmt. ¶ 30, ECF No. 179. Envision further asserts that Plaintiffs defamed Envision during this conversation by telling Hasan that Envision was refusing to make a payment to Plaintiffs. Envision's LR 56.1(b)(3) ¶ 68.

Throughout September and early October of 2013, Plaintiffs withheld freight forwarder documents that were necessary for some of the merchandise in the 2013 Transaction to clear customs. Pls.' LR 56.1(a)(3) Stmt. ¶ 40. Plaintiffs claim that they withheld these documents to obtain a written guarantee of payment for the merchandise from either Envision or Walgreens. *Id.* By contrast, Envision claims that Plaintiffs' purpose in withholding these documents was to obtain a new letter of credit listing Sunny as the beneficiary. Envision's LR 56.1(b)(3) Stmt. ¶ 40.

On October 11, 2013, Envision sent an e-mail to Teresa Chu, a Walgreens employee. Envision's LR 56.1(a)(3) Stmt. ¶¶ 46–47. Chu had inquired about the status of the delayed shipments for the 2013 Transaction. *Id.*, Ex. AA at 1–2. In responding to Chu's inquiry, Envision wrote:

> [T]he bookings were done by the factory. They changed our passwords [on the freight forwarding system] and . . . we are blind with the facts, hence the reason we were working on trying to gather the information collectively to help put a stop to the nonsense. . . . Again, all our facts were all documents were submitted. So there is a litany of misrepresentations by Sunny Handicraft. Such to the fact that legal action has transpired.

*Id.* at 2.

On October 13, 2013, Envision sent a separate e-mail to Hasan. Envision's LR 56.1(a)(3) Stmt. ¶ 48. In this e-mail, Envision wrote:

> As for Daniel [Huang] at this point this is just pure Chinese thievery, gangsters. We have written confirmation all docs were submitted. It is one continual lie upon lie on their end. Their actions are completely unethical and our lawyers are handling.

Envision's LR 56.1(a)(3) Stmt., Ex. AB at 1.

On October 15, 2013, Plaintiffs finally provided the freight forwarder documents needed for the merchandise in the 2013 Transaction to clear customs. Pls.' LR 56.1(a)(3) Stmt. ¶ 41.

By November 20, 2013, all of the merchandise had arrived at Walgreens's distribution centers. Walgreens's LR 56.1(a)(3) Stmt. ¶ 35, ECF No. 166. Neither Envision nor Walgreens has ever paid Plaintiffs for manufacturing and shipping the merchandise. Pls.' LR 56.1(a)(3) Stmt. ¶¶ 27, 32.

## Legal Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To survive summary judgment, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and instead must "establish some genuine issue for trial such that a reasonable jury could return a verdict in her favor." *Gordon v. FedEx Freight, Inc.*, 674 F.3d 769, 772–73 (7th Cir. 2012). In reviewing a motion for summary judgment, the Court gives the nonmoving party "the benefit of conflicts in the evidence and reasonable inferences that could be drawn from it." *Grochocinski v. Mayer Brown Rowe & Maw, LLP*, 719 F.3d 785, 794 (7th Cir. 2013). The Court must not make credibility determinations or weigh conflicting evidence. *McCann v. Iroquois Mem'l Hosp.*, 622 F.3d 745, 752 (7th Cir. 2010).

## Analysis

### I. Plaintiffs' Breach of Contract Claim Against Walgreens

In their Third Amended Complaint, Plaintiffs allege a claim for breach of contract against Walgreens based upon Walgreens's failure to pay Plaintiffs for the merchandise that was manufactured and shipped as part of the 2013 Transaction. 3d Am. Compl. ¶¶ 42–51, ECF No. 124. Although the parties never memorialized the 2013 Transaction in a formal writing, Plaintiffs argue that they had a contract implied in fact for the sale of the merchandise.

Walgreens denies that any such contract ever existed and seeks summary judgment as to this claim.

The Uniform Commercial Code (UCC) governs contracts for the sale of goods in Illinois.[2] 810 Ill. Comp. Stat. 5/1-101 *et seq.*; *Razor v. Hyundai Motor Am.*, 854 N.E.2d 607, 615 (Ill. 2006). Under the UCC, a contract for the sale of goods may be implied in fact. 805 Ill. Comp. Stat. 5/2-204. A contract implied in fact may arise "under circumstances which, according to the ordinary course of dealing and the common understanding of men, show a mutual intention to contract." *Dynegy Mktg. & Trade v. Multiut Corp.*, 648 F.3d 506, 517 (7th Cir. 2011) (quoting *Mowatt v. City of Chi.*, 127 N.E. 176, 177 (Ill. 1920)).

Whether parties have formed a contract implied in fact "depends on the facts, circumstances, and expressions by [the] parties demonstrating an intent to be bound." *Trapani Constr. Co. v. Elliot Grp., Inc.*, 64 N.E.3d 132, 141 (Ill. App. Ct. 2016). In cases where the parties dispute whether the facts and circumstances demonstrate their intent to be bound, the existence of a contract implied in fact is a question of fact that must be decided by a jury. *Id.* (citing *Quinlan v. Stouffe*, 823 N.E.2d 597, 602 (Ill. App. Ct. 2005)). A jury may infer the existence of an implied-in-fact contract from the parties' general course of dealing. *Dallis v. Don Cunningham & Assocs.*, 11 F.3d 713, 716 (7th Cir. 1993) (citing *In re Estate of Brumshagen*, 169 N.E.2d 112, 117 (Ill. App. Ct. 1960)).

Plaintiffs and Walgreens do not dispute that, from 2007 to 2012, Walgreens routinely paid for Plaintiffs' goods by issuing letters of credit listing Sunny as the sole beneficiary. Pls.' Stmt. Add. Facts Opp. Walgreens ¶¶ 12–13, ECF No. 180. At trial, Plaintiffs is entitled to argue to the jury that this course of dealing evinces the existence of an implied-in-fact contract with

---

[2]     Except where noted herein, the parties do not dispute that Illinois law governs the claims, counterclaims, and defenses raised in this case.

Walgreens for the sale of merchandise in the 2013 Transaction.  *See Trapani*, 64 N.E.3d at 141; *Dallis*, 11 F.3d at 716.  Plaintiffs have therefore raised a genuine issue of material fact as to whether the parties had an implied-in-fact contract.  This issue precludes summary judgment in Walgreens's favor on Plaintiffs' breach of contract claim.  *See, e.g.*, *Beacon Textile Unit-2 v. JK Grp., Ltd.*, No. 09 CV 3301, 2010 WL 4338477, at *4 (N.D. Ill. Oct. 25, 2010) (denying summary judgment on breach of contract claim involving an implied contract for the sale of goods where parties disputed the contract's existence).

Walgreens contends that Plaintiffs have waived their ability to rely upon the parties' course of dealing in support of their breach of contract claim.  Walgreens's Mem. Supp. Mot. Summ. J. at 12–13, ECF No. 165.  In reviewing Walgreens's motion for summary judgment, it remains unclear to the Court whether Walgreens intends to argue that this alleged waiver precludes Plaintiffs from proving the existence of an implied-in-fact contract, or whether Walgreens instead intends to argue that waiver precludes Plaintiffs from enforcing the purported contract's terms.  In any event, neither argument is availing, because Plaintiffs have not made any type of waiver in relation to this claim.

Under the UCC, the parties' course of performance may "give rise to waiver of express contractual terms if those terms are not strictly adhered to."  *Midwest Builder Distrib., Inc. v. Lord & Essex, Inc.*, 891 N.E.2d 1, 28 (Ill. App. Ct. 2007).  Although waiver can be implied by the parties' conduct, courts will find an implied waiver only if the waiver is clearly inferable from the circumstances.  *Id.*; *Lavelle v. Dominick's Finer Foods, Inc. of Ill.*, 592 N.E.2d 287, 291 (Ill. App. Ct. 1992).

As evidence of Plaintiffs' alleged waiver, Walgreens points only to the fact that Plaintiffs shipped the merchandise for the 2013 Transaction after they had already learned that Sunny was

not listed as the beneficiary on Walgreens's letters of credit. Walgreens LR 56.1(a)(3) ¶¶ 36–37. It is by no means clearly inferable, however, that Plaintiffs intended this shipment to serve as an implied waiver of Walgreens's obligation to pay for the shipped goods. Rather, by finalizing the shipment, Plaintiffs appear to have been simply performing their end of the contract they claim to have had with Walgreens. *Cf. Emerald Investments Ltd. P'ship v. Allmerica Fin. Life Ins. & Annuity Co.*, 516 F.3d 612, 618 (7th Cir. 2008) ("If a party to a contract breaks it, the other party . . . can continue with the contract and sue for damages."). At trial, Walgreens may note the timing of Plaintiffs' shipment in arguing to the jury that Plaintiffs lacked an intent to be bound by an implied-in-fact-contract. *See Trapani*, 64 N.E.3d at 142–44. But Walgreens has not persuaded the Court that Plaintiffs' shipment amounted to a waiver that precludes Plaintiffs as a matter of law from proceeding with their breach of contract claim. Walgreens's motion for summary judgment as to Plaintiffs' breach of contract claim is thus denied.

## II. Plaintiffs' Unjust Enrichment Claim Against Walgreens

In the alternative to their breach of contract claim, Plaintiffs bring an unjust enrichment claim based upon Walgreens's retention of the goods that Plaintiffs manufactured and shipped as part of the 2013 Transaction. To prevail on a claim for unjust enrichment, Plaintiffs must show that Walgreens unjustly retained a benefit to Plaintiffs' detriment and that Walgreens's retention of the benefit "violates the fundamental principles of justice, equity, and good conscience." *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 516 (7th Cir. 2011) (quoting *HPI Health Care Servs. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 679 (Ill. 1989)). Courts generally require a plaintiff bringing an unjust enrichment claim to demonstrate that it had a reasonable expectation of payment for the benefit conferred on the defendant. *See Midcoast Aviation, Inc. v. Gen. Elec. Credit Corp.*, 907 F.2d 732, 740 (7th Cir. 1990). Absent a

reasonable expectation of payment, a plaintiff cannot demonstrate that the defendant's retention of the benefit was unjust.  *See id.*

Walgreens argues that it is entitled to summary judgment on Plaintiffs' unjust enrichment claim on the ground that Plaintiffs had no reasonable expectation of payment from Walgreens for the merchandise in the 2013 Transaction.  In response, Plaintiffs assert that they indeed had a reasonable expectation of payment from Walgreens, given that Walgreens had paid for all of Plaintiffs' past shipments of merchandise from 2007 to 2012 by issuing letters of credit listing Sunny as the beneficiary.  *See* Pls.' Stmt. Add. Facts Opp. Walgreens ¶¶ 12–13.  Plaintiffs have therefore raised a genuine issue of material fact as to whether they had a reasonable expectation of payment from Walgreens for the merchandise Plaintiffs manufactured and shipped in 2013. *See Midcoast Aviation*, 907 F.2d at 740; *U.S.C.C. Mgmt. Co. v. Ogden Allied Sec. Servs., Inc.*, No. 90 C 1389, 1991 WL 274445, at *5 (N.D. Ill. Dec. 13, 1991) (genuine issue of material fact as to whether plaintiff had a reasonable expectation of payment precluded summary judgment on unjust enrichment claim under Illinois law).  Walgreens's motion for summary judgment as to Plaintiffs' unjust enrichment claim is accordingly denied.

## III.    Plaintiffs' Breach of Contract Claim Against Envision

In addition to their claims against Walgreens, Plaintiffs bring a breach of contract claim against Envision based upon Envision's failure to remit any of the money it received through Walgreens's letters of credit in connection with the 2013 Transaction.  Plaintiffs have moved for summary judgment on this claim as to the issue of liability, asserting that there are no material disputes regarding the terms of Plaintiffs' contract with Envision, Envision's breach of the contract, and Plaintiffs' substantial performance.

"Under Illinois law, a plaintiff looking to state a colorable breach of contract claim must allege four elements: '(1) the existence of a valid and enforceable contract; (2) substantial

performance by the plaintiff; (3) a breach by the defendant; and (4) resultant damages.'" *Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 764 (7th Cir. 2010) (quoting *W.W. Vincent & Co. v. First Colony Life Ins. Co.*, 814 N.E.2d 960, 967 (Ill. 2004)). Where an agreement is not reduced to a formal writing, the party seeking relief from an alleged breach bears the burden of proving both the existence and the terms of the parties' agreement. *Spivey v. Adaptive Mktg. LLC*, 622 F.3d 816, 820 (7th Cir. 2010); *Richco Plastic Co. v. IMS Co.*, 681 N.E.2d 56, 59 (Ill. App. Ct. 1997).

Here, the parties do not dispute that they had an agreement under which Plaintiffs compensated Envision for its assistance in arranging sales of merchandise to U.S. retailers, including to Walgreens. Pls.' LR 56.1(a)(3) Stmt. ¶ 9. But critical factual disputes preclude summary judgment in Plaintiffs' favor with respect this claim. First, citing affidavits from each of its co-owners as support, Envision denies that it was required under the terms of the parties' agreement to coordinate Plaintiffs' payment from Walgreens. *See* Envision's LR 56.1(b)(3) Stmt. ¶¶ 18, 21. If the terms of the agreement did not obligate Envision to coordinate payment, Envision argues, then its failure to coordinate payment cannot constitute a breach. In addition, Envision contends that Plaintiffs failed to substantially perform on the parties' agreement by not participating in the parties' "truing up" process for 2013. *Id.* ¶ 34.

Envision has thus raised genuine disputes of material fact as to each of the first three elements of Plaintiffs' breach of contract claim. Any one of these factual disputes is sufficient to preclude summary judgment in Plaintiffs' favor. *See, e.g.*, *U.S. ex rel. Pileco, Inc. v. Slurry Sys., Inc.*, 872 F. Supp. 2d 710, 718 (N.D. Ill. 2012) (denying summary judgment where there was a genuine dispute as to whether plaintiff had substantially performed its contractual obligations).

Plaintiffs' motion for summary judgment as to their breach of contract claim against Envision is therefore denied.[3]

## IV.    Plaintiffs' Defamation Claims Against Envision

Next, Plaintiffs bring claims for defamation against Envision based upon the statements Envision made to Walgreens's representatives in e-mails sent on October 11 and October 13, 2013.  To prevail on a claim for defamation under Illinois law, a plaintiff must show that "the defendant made a false statement about the plaintiff, the defendant made an unprivileged publication of that statement to a third party, and [ ] this publication caused damages."  *Solaia Tech., LLC v. Specialty Pub. Co.*, 852 N.E.2d 825, 839 (Ill. 2006).

Plaintiffs have alleged claims for both defamation *per se* and defamation *per quod*.  A statement is defamatory *per se* if its harm to the plaintiff's reputation is "obvious or apparent on its face."  *Id.*  As relevant to this case, Illinois law deems statements to be defamatory *per se* if they "imput[e] an inability to perform or want of integrity in performing employment duties" or "imput[e] a lack of ability or [ ] otherwise prejudice a person in his or her profession or business."  *Tuite v. Corbitt*, 866 N.E.2d 114, 121 (Ill. 2006).  In an action for defamation *per se*, damage to the plaintiff's reputation is presumed.  *Id.* (citing *Owen v. Carr*, 497 N.E.2d 1145, 1147 (Ill. 1986)).

---

[3]    Because summary judgment as to Plaintiffs' breach of contract claim against Envision is denied for the above-stated reasons, the Court need not address Envision's alternative argument that the affirmative defense of unclean hands bars the claim under Florida law.  That said, the Court notes that Illinois law—not Florida law—governs Envision's unclean hands defense, because Illinois law and Florida law do not conflict on this issue.  *Compare Jackson v. Bd. of Election Comm'rs of City of Chi.*, 975 N.E.2d 583, 590 (Ill. 2012), *with Yost v. Rieve Enters., Inc.*, 461 So. 2d 178, 184 (Fla. Dist. Ct. App. 1984); *see also Jean v. Dugan*, 20 F.3d 255, 260 (7th Cir. 1994) ("Where there is no disagreement among the contact states, the law of the forum state applies.").  Under Illinois law, the unclean hands defense applies only to a proceeding to obtain equitable relief.  *Jackson*, 975 N.E.2d at 590.  Because Plaintiffs seek only monetary damages and not equitable relief in connection with their breach of contract claims, the unclean hands defense is of no avail to Envision.

By contrast, a statement is defamatory *per quod* if extrinsic facts are needed to establish that the statement is harmful to the plaintiff's reputation. *Myers v. Levy*, 808 N.E.2d 1139, 1147 (Ill. App. Ct. 2004). In an action for defamation *per quod*, damage to the plaintiff's reputation is not presumed, and the plaintiff must prove special damages in order to recover. *Id.*; *Tuite*, 866 N.E.2d at 121.

Envision has offered three primary arguments in contending that, based on the undisputed facts, Plaintiffs' defamation claims fail as a matter of law. First, Envision argues that its allegedly defamatory statements are unactionable because they are substantially true. Second, it argues that its statements are unactionable because they were made pursuant to a qualified privilege. Third, it contends that Plaintiffs have failed to adduce evidence showing that the statements harmed Plaintiffs' reputations vis-à-vis Walgreens. The Court will address each of these arguments in turn.

## A.    Truth or Falsity of the Allegedly Defamatory Statements

Under Illinois law, "[a]n allegedly defamatory statement is not actionable if it is substantially true." *Parker v. House O'Lite Corp.*, 756 N.E.2d 286, 296 (Ill. App. Ct. 2001) (citing *Cianci v. Pettibone Corp.*, 698 N.E.2d 674, 678 (Ill. App. Ct. 1998)). "A defendant bears the burden of establishing the substantial truth of her assertions, which she can demonstrate by showing that the 'gist' or 'sting' of the defamatory material is true." *Id.* In ascertaining the "gist" of an allegedly defamatory statement, courts consider the main highlights of the statement and its "pertinent angle." *Id.* (quoting *Gist v. Macon Cnty. Sheriff's Dep't*, 671 N.E.2d 1154, 1157 (Ill. App. Ct. 1996)) (internal quotation marks omitted). In general, the defense of substantial truth is a highly fact-intensive issue that must be resolved by a jury. *Id.*; *Cianci*, 698 N.E.2d at 679; *Bogosian v. Bd. of Educ. of Cmty. Unit Sch. Dist. 200*, 134 F. Supp. 2d 952, 957 (N.D. Ill. 2001).

In its October 11 e-mail, Envision told a Walgreens representative that Plaintiffs had "changed [Envision's] passwords" to the freight forwarding system that was used to ship Plaintiffs' goods. Envision's LR 56.1(a)(3) Stmt., Ex. AA at 2. Envision further wrote: "[T]here is a litany of misrepresentations by Sunny Handicraft. Such to the fact that legal action has transpired." *Id.* As the Court discussed in a previous order, the gist of these statements was to accuse Plaintiffs of lying about the status of their shipping process and of improperly changing the freight forwarding password so as to undermine Envision's ability to check the status of Plaintiffs' shipments. *See* Order of 5/12/16 at 4, ECF No. 139.

Envision argues that the statements in the October 11 e-mail were substantially true. In particular, it claims that Plaintiffs falsely told Envision and Walgreens that certain shipping documents had been submitted for the merchandise in the 2013 Transaction when, in reality, Plaintiffs were still withholding those documents. Envision's LR 56.1(a)(3) Stmt. ¶¶ 32, 34–35. Envision also asserts that Plaintiffs changed the freight forwarding password and then improperly withheld the new password from Envision. Envision's LR 56.1(b)(3) Stmt. ¶ 38. By contrast, Plaintiffs deny that they ever made any misrepresentations about the status of their shipping documents, and they argue that the evidence Envision offers to show otherwise is unsupportive and inadmissible. Pls.' LR 56.1(b)(3) Stmt. Resp. Envision ¶¶ 32, 34–35. Further, while Plaintiffs acknowledge that they changed the password to the freight forwarding system, they claim that the change was not improper because they had Envision's authorization to make it. Pls.' LR 56.1(a)(3) Stmt. ¶ 38. Given these factual disputes, the Court agrees with Plaintiffs that a reasonable jury could find that Envision has not met its burden of proving the substantial truth of its statements in the October 11 e-mail.

The statements in the October 13 e-mail fare similarly. In this e-mail, Envision told Walgreens that Plaintiffs were engaging in "pure Chinese thievery," thereby suggesting that Plaintiffs had engaged in a "completely unethical" business practice. Envision's LR 56.1(a)(3) Stmt., Ex. AB at 1. In addition, Envision again accused Plaintiffs of lying about the status of their shipping process, stating that Plaintiffs had made "one continual lie upon lie." *Id.* As with the October 11 e-mail, the parties dispute whether it is substantially true that Plaintiffs told any such lies. *See* Envision's LR 56.1(a)(3) Stmt. ¶¶ 32, 34–35; Pls.' LR 56.1(b)(3) Stmt. Resp. Envision ¶¶ 32, 34–35. Moreover, they dispute whether it is substantially true that Plaintiffs engaged in conduct amounting to "thievery" or otherwise involving an unethical business practice. On the one hand, Envision claims that that the "thievery" statement is substantially true because Plaintiffs improperly withheld shipping documents to "blackmail" Walgreens or Envision into issuing a new letter of credit. Envision's LR 56.1(a)(3) Stmt. ¶¶ 29–30. On the other hand, while Plaintiffs admit that they temporarily withheld some shipping documents, they claim that they had the right to do so in attempting to obtain a written guarantee of payment. Pls.' LR 56.1(a)(3) Stmt. ¶ 40. Given Plaintiffs' account of their purpose in withholding these documents, alongside the fact that Plaintiffs provided all necessary documents by October 15, *see id.* ¶ 41, a reasonable jury could find that the gist of Envision's October 13 e-mail was not substantially true.

In sum, the parties dispute numerous issues of fact that are central to Envision's substantial truth defense. A reasonable jury could resolve these issues in Plaintiffs' favor. *See Parker*, 756 N.E.2d at 296–97. As such, summary judgment in Envision's favor on the basis of the substantial truth defense is unwarranted.

### B.     Qualified Privilege

Next, Envision argues that Plaintiffs cannot prevail on their defamation claims as a matter of law because Envision made the allegedly defamatory statements pursuant to a qualified privilege.  According to Envision, it had a qualified privileged to make the statements both because it had "an interest in addressing its contractual obligations with Walgreens" and because Walgreens had "an interest in knowing the status of its purportedly shipped goods."  Envision's Mem. Supp. Mot. Summ. J. at 14–15, ECF No. 162.

As a threshold matter, Plaintiffs argue that Envision has waived any arguments based upon qualified privilege by failing to plead qualified privilege as an affirmative defense in its answer.  Plaintiffs are correct that qualified privilege is an affirmative defense to defamation under Illinois law.  *See Babb v. Minder*, 806 F.2d 749, 753 (7th Cir. 1986).  But "when parties argue an affirmative defense in the district court, technical failure to plead the defense is not fatal."  *De Valk Lincoln Mercury, Inc. v. Ford Motor Co.*, 811 F.2d 326, 334 (7th Cir. 1987).  Thus, "although Rule 8(c) requires affirmative defenses to be raised in the pleadings, 'a delay in asserting an affirmative defense waives the defense only if the plaintiff was harmed as a result.'"  *Doctor's Data, Inc. v. Barrett*, 170 F. Supp. 3d 1087, 1106 (N.D. Ill. 2016) (quoting *Curtis v. Timberlake*, 436 F.3d 709, 711 (7th Cir. 2005)).

Here, Plaintiffs protest that they are prejudiced by Envision's failure to claim a qualified privilege in its answer, on the basis that they were "unable to conduct discovery regarding the nature of the purported 'interest' supporting Envision's claim."  Pls.' Resp. Envision's Mot. Summ. J. at 17, ECF No. 175.  But Plaintiffs have made no attempt to explain what additional discovery they would have conducted if Envision's answer had included a qualified privilege defense.  Furthermore, it is unclear to the Court what any such additional discovery might have entailed, given that the issue of whether a qualified privilege exists is a question of law rather

than a question of fact. *See Kuwik v. Starmark Star Mktg. & Admin., Inc.*, 619 N.E.2d 129, 133 (Ill. 1993). Finally, Plaintiffs' assertion of prejudice is undercut by the fact that they have been able to adequately address Envision's qualified privilege defense in responding to Envision's motion for partial summary judgment. *See* Pls.' Resp. Envision's Mot. Summ. J. at 16–19. For these reasons, the Court finds that Envision has not waived its qualified privilege defense by failing to plead the defense in its answer. *See Doctor's Data*, 170 F. Supp. 3d at 1106 (finding that defendants did not waive their privilege defense to plaintiff's defamation claim where defendants raised the defense for the first time in their motion for summary judgment); *Chi v. Loyola Univ. Med. Ctr.*, No. 10 C 6292, 2013 WL 422868, at *4 (N.D. Ill. Feb. 1, 2013) (same); *Phillips v. Quality Terminal Servs., LLC*, 855 F. Supp. 2d 764, 789 (N.D. Ill. 2012) (same). As such, the Court now turns to address Envision's qualified privilege defense on the merits.

Under Illinois law, the qualified privilege doctrine protects certain communications by increasing a defamation plaintiff's burden of proof. *Kuwik*, 619 N.E.2d at 133. Where a qualified privilege exists, the plaintiff must prove that the defendant made the allegedly defamatory statements with either knowledge or reckless disregard of the statements' falsity. *Solaia*, 852 N.E.2d at 850. The qualified privilege doctrine is based upon "'the policy of protecting honest communications of misinformation' in certain favored circumstances in order to facilitate the availability of correct information." *Jones v. W. & S. Life Ins. Co.*, 91 F.3d 1032, 1035 (7th Cir. 1996) (quoting *Kuwik*, 619 N.E.2d at 133). Whether a statement is protected by a qualified privilege is a question of law, and the defendant bears the burden of establishing the existence of any qualified privilege it asserts. *Kuwik*, 619 N.E.2d at 133–34.

Illinois courts have identified three categories of circumstances under which a qualified privilege might arise: "(1) situations in which some interest of the person who publishes the

defamatory matter is involved; (2) situations in which some interest of the person to whom the matter is published or of some other third person is involved; and (3) situations in which a recognized interest of the public is concerned." *Anderson v. Beach*, 897 N.E.2d 361, 367 (Ill. App. Ct. 2008) (quoting *Kuwik*, 619 N.E.2d at 135) (internal quotation marks and brackets omitted). "In determining whether a qualified privilege exists, a court is to consider only the general type of communication involved, not the particular communication involved in the case *sub judice*." *Naleway v. Agnich*, 897 N.E.2d 902, 909 (Ill. App. Ct. 2008). "The inquiry is a general one, requiring the court to weigh the value of the type of interest to be protected against the degree of damage to be expected from release of the type of defamatory matter involved." *Turner v. Fletcher*, 706 N.E.2d 514, 517 (Ill. App. Ct. 1999).

The categories of situations in which a qualified privilege might apply are potentially vast in scope, and Illinois courts have not outlined a framework for assessing which kinds of private and public interests are sufficiently weighty to give rise to the existence of a qualified privilege. *See Miller UK Ltd. v. Caterpillar Inc.*, No. 10-CV-03770, 2015 WL 6407223, at *10 (N.D. Ill. Oct. 21, 2015) (noting the lack of guidance from Illinois courts in this area). That said, the majority of defamation cases in which Illinois courts have found a qualified privilege take place in the employment setting and involve employers' and employees' statements regarding employee evaluations or misconduct. *See Ogbolumani v. Young*, 2015 WL 1284064, at *5 (Ill. App. Ct. Mar. 20, 2015); *Anderson*, 897 N.E.2d at 367–68; *Popko v. Cont'l Cas. Co.*, 823 N.E.2d 184, 190 (Ill. App. Ct. 2005); *Achanzar v. Ravenswood Hosp.*, 762 N.E.2d 538, 542–43 (Ill. App. Ct. 2001); *Vickers v. Abbott Labs.*, 719 N.E.2d 1101, 1108 (Ill. App. Ct. 1999); *Turner*, 706 N.E.2d at 517–19; *Quinn v. Jewel Food Stores, Inc.*, 658 N.E.2d 1225, 1234 (Ill. App. Ct. 1995). Qualified privilege has also been found to cover statements by health-care professionals and

insurance companies regarding the medical care of insured individuals.  *See Barakat v. Matz*, 648 N.E.2d 1033, 1040 (Ill. App. Ct. 1995); *Kuwik*, 619 N.E.2d at 135.  Bearing this backdrop in mind, the Court turns to consider whether a qualified privilege exists in the present case.

Envision claims that it had a qualified privilege to make the statements in the October 11 and October 13 e-mails on the ground that the statements implicated interests of both Envision and Walgreens.  Envision characterizes its interests broadly as an "interest in addressing its contractual obligations with Walgreens" and an "interest in its business relationship with Walgreens."  Envision's Mem. Supp. at 14; Envision's Reply at 9, ECF No. 190.  In similarly broad terms, it describes Walgreens's interest as "an interest in knowing the status of its purportedly shipped goods."  Envision's Mem. Supp. at 15.

Envision has made no attempt to explain to the Court whether or why these types of general business interests might outweigh concerns regarding "the degree of damage to be expected from release of the type of defamatory matter involved."  *Turner*, 706 N.E.2d at 517 (citing *Kuwik*, 619 N.E.2d at 134).  Furthermore, Envision has not cited—and the Court has not found—any authority suggesting that Illinois courts recognize these types of general business interests as giving rise to a qualified privilege.  Given the lack of supporting authority, the Court concludes that a finding of qualified privilege in this case would expand the doctrine's application beyond the scope contemplated by Illinois law, and Envision has not persuaded the Court that such an expansion is appropriate.

For these reasons, the Court concludes that Envision has failed to carry its burden of showing its allegedly defamatory statements were protected by a qualified privilege.  *See Kuwik*, 619 N.E.2d at 133–34.  Envision's motion for summary judgment on Plaintiffs' defamation claims on the basis of qualified privilege is therefore denied.

### C.      Evidence of Special Damages

Lastly, Envision argues that Plaintiffs' defamation claims fail on the ground that Plaintiffs have not supported these claims with evidence of special damages.  Envision is correct that, in responding to Envision's motion for summary judgment, Plaintiffs have not pointed to a single piece of evidence as proof of damage to their reputations.  Harm to a plaintiff's reputation cannot be presumed for a claim of defamation *per quod*, and a plaintiff bringing such a claim must therefore prove special damages in order to recover.  *Tuite*, 866 N.E.2d at 121.  Given Plaintiffs' lack of proof of special damages, Envision is entitled to summary judgment on Plaintiffs' claim for defamation *per quod*.

Plaintiffs' claim for defamation *per se* is another matter.  When a plaintiff brings a claim for defamation *per se*, harm to the plaintiff's reputation is presumed, and the plaintiff need not prove damages in order to prevail.  *Id.*  Thus, Plaintiffs' failure to offer evidence of damage to their reputations is not fatal to their claim for defamation *per se*.

Envision insists otherwise, arguing that it has successfully rebutted the presumption of damages by proving that the statements in question caused no harm whatsoever to Plaintiffs' reputations.  Envision's Mem. Supp. at 11–13; Envision's LR 56.1(a)(3) Stmt. ¶¶ 50–51.  As evidentiary support, Envision relies solely upon an affidavit in which Hasan states: "I made the decision whereby Walgreens no longer associates with Plaintiffs.  This decision was not based on the contents of either the October 11, 2013 e-mail or the October 13, 2013 e-mail."  Envision's LR 56.1(a)(3) Stmt., Ex. AC ¶¶ 5–6.

As a threshold matter, the Court notes that the issue of whether the presumption of damages is rebuttable in an action for defamation *per se* has not been conclusively resolved by Illinois courts.  In *Knight v. Chicago Tribune Co.*, which Envision cites, the Illinois Appellate Court expressed support in dicta for the proposition that the presumption of damages is indeed

rebuttable. 895 N.E.2d 1007, 1015 (Ill. App. Ct. 2008). But the court explicitly reserved this issue rather than deciding it. *Id.*

Assuming *arguendo* that the presumption of damages is rebuttable under Illinois law, however, the Court nevertheless finds Envision's argument to be unpersuasive. Hasan's affidavit shows only that her decision to terminate Walgreens's association with Plaintiffs was not based upon the statements in the October 11 and October 13 e-mails. Envision's LR 56.1(a)(3) Stmt., Ex. AC ¶¶ 5–7. The fact that Envision's statements did not affect Hasan's decision does not necessarily mean that the statements caused no damage to Plaintiffs' reputations. Rather, a reasonable jury crediting the evidence in Hasan's affidavit could still conclude that the e-mails lowered Plaintiffs' reputations in the eyes of other Walgreens representatives who received the subject e-mails. *See, e.g.*, *id.*, Ex. AA at 1 (showing that five individuals other than Hasan received electronic copies of the October 11 e-mail on October 12, 2013).

For these reasons, Envision's evidence does not conclusively demonstrate that Plaintiffs suffered no harm to their reputations such that they should be precluded from recovering as a matter of law. Envision's motion for summary judgment on Plaintiffs' claim for defamation *per se* is thus denied.

## V.    Envision's Defamation Claims

In its Third Amended Counterclaim, Envision brings its own claims for defamation *per se* and defamation *per quod* against Plaintiffs based upon statements that Huang made to Hasan during their telephone conversation on August 20, 2013. In particular, Envision takes issue with Huang's alleged statements that Envision was refusing to make a payment to Plaintiffs and that Sunny would not ship the goods in the 2013 Transaction unless a new letter of credit was issued listing Sunny as the beneficiary. Envision's LR 56.1(b)(3) Stmt. ¶¶ 35, 38. According to

Envision, these statements were defamatory because they "implied that Envision breached a contract with Sunny, which imputes a lack of integrity in business." Envision's Resp. at 20.

In seeking summary judgment as to Envision's defamation claims, Plaintiffs dispute that Huang's statements implied that Envision had breached a contract. Plaintiffs also argue that, even if the statements indeed carried such an implication, they are unactionable as defamation *per se* because accusing someone of breaching a contract does not impute a lack of integrity. In the context of the August 20 phone call, however, Huang's statement that Envision refused to pay Plaintiffs clearly implied that Plaintiffs expected such a payment to be forthcoming. As such, Huang's statement is reasonably construed as implying that Envision refused to pay Plaintiffs despite a contractual obligation to do so. The Seventh Circuit has held that statements communicating that someone has breached a contract by refusing to make a payment qualifies as defamation *per se* under Illinois law. *See Giant Screen Sports v. Canadian Imperial Bank of Commerce*, 553 F.3d 527, 533–34 (7th Cir. 2009) (statement asserting that plaintiff refused to make a legally obligated payment and implying that plaintiff's refusal was willful qualified as defamation *per se*, because it imputed a lack of integrity as a business); *cf. Horowitz v. Animal Emergency & Treatment Ctrs. of Chi., LLC*, No. 12 C 2561, 2012 WL 3598807, at *5–7 (N.D. Ill. Aug. 20, 2012) (permitting plaintiff to proceed on claim for defamation *per se* based upon defendant's alleged statement to plaintiff's new employer that plaintiff had breached an employment contract with defendant). The Court therefore rejects Plaintiffs' argument that Huang's alleged statements are unactionable as defamation *per se*. Plaintiffs' motion for summary judgment as to Envision's claim for defamation *per se* is accordingly denied.

Next, Plaintiffs contend that Huang's statements are unactionable as defamation *per quod*, on the ground that Envision has failed to develop sufficient evidence of special damages.

As noted above, a party seeking to prevail on a claim of defamation *per quod* must prove special damages in order to recover. *Tuite*, 866 N.E.2d at 121. To prove special damages, vague allegations of general harm to reputation are insufficient, *see Anderson v. Vanden Dorpel*, 667 N.E.2d 1296, 1303–04 (Ill. 1996), as are estimates of damages "based on nothing but conjecture," *Tamburo v. Dworkin*, 974 F. Supp. 2d 1199, 1220 (N.D. Ill. 2013).

Here, Envision asserts that Plaintiffs' statements "ruined" Envision's credibility. Envision's LR 56.1(b)(3) Stmt. ¶ 68. But Envision has failed to adduce sufficient evidence to substantiate this conclusory assertion. Rather, the only evidence it marshals in support is from the deposition testimony of Beth Edwards, one of Envision's two co-owners. During her deposition, Edwards stated that "once Daniel [Huang] picked up the telephone to Walgreens and started misrepresenting the truth . . . , he completely destroyed [Envision's] credibility in the industry and, in turn, destroyed [Envision's] business." *Id.*, Ex. G, 321:17–21. This testimony amounts to precisely the sort of speculative, general claim of damages that courts have held to be insufficient to support an action for defamation *per quod*. *See Anderson*, 667 N.E.2d at 1303–04. Without proof of special damages, Envision's claim for defamation *per quod* fails. Plaintiffs' motion for summary judgment as to this claim is therefore granted.

## VI.   Envision's Breach of Contract Claim

Next, Envision brings a counterclaim for breach of contract against Plaintiffs. This claim is based both upon Plaintiffs' failure to participate in the parties' "truing up" process in 2013, as well as upon Plaintiffs' failure to otherwise compensate Envision for the costs associated with services Envision provided in connection with the 2013 Transaction. Envision identifies these costs as including advertising expenses, the cost of designing artwork for Plaintiffs' packaging, expedited shipping expenses, bank fees, and costs incurred due to Plaintiffs' delay in providing shipping documents. 3d Am. Counterclaim ¶¶ 10–29, ECF No. 118.

Under Illinois law, a party seeking to prevail on a breach of contract claim must prove (1) the existence of a valid and enforceable contract, (2) substantial performance, (3) breach, and (4) damages. *Reger*, 592 F.3d at 764. Here, a reasonable jury could conclude that Envision has satisfied its burden of proving each of these four elements. First, the parties do not dispute that they had an agreement governing the compensation structure under which Plaintiffs paid Envision for the services it provided in facilitating the sale of Plaintiffs' merchandise to U.S. retailers. Pls.' LR 56.1(a)(3) Stmt. ¶ 9. Plaintiffs deny that they agreed to compensate Envision in any way other than by paying a $10,000 annual fee, a commission based on the price of goods sold, and reimbursements to cover the cost of samples, courier charges, hotel fees, and translation services. *See* Pls.' Reply Envision's Stmt. Add. Facts ¶¶ 89–92. But Envision asserts that Plaintiffs agreed to further compensate Envision in the form of "additional money for its product development, trend tracking, and database management services in addition to reimbursing Envision for the artwork it commissioned for Plaintiffs' products." Envision's LR 56.1(b)(3) Stmt. ¶ 12. In support of this assertion, Envision points to testimony from Edwards's deposition, in which Edwards explained that Huang "promised to give [Envision] monies over the year continually to do product development and data management." *Id.*, Ex. G, 154:7–9. Envision also points to an affidavit in which its other co-owner, Robert Hetzler, attested that Huang "promise[d] to make it right with Envision and pay it for the full value of the services provided by Envision" beyond Plaintiffs' payment of the annual fee and commission. *Id.*, Ex. A ¶¶ 15–18. Envision has therefore created a genuine issue of material fact as to whether Plaintiffs agreed to pay Envision compensation in addition to the undisputed annual fee, commission, and reimbursement expenses.

Envision has also raised genuine issues of material fact with regard to the elements of substantial performance, breach, and damages. In particular, Envision has offered evidence suggesting that it substantially performed its end of the parties' bargain by providing the services Plaintiffs agreed to pay for, including services such as "product development, trend tracking, artwork creation, and database management." Envision's Stmt. Add. Facts ¶ 90. And it has offered evidence suggesting that Plaintiffs committed a breach by failing to pay for these services. *Id.* ¶ 92. A jury considering this evidence could conclude that Envision suffered damages for the amount that Plaintiffs agreed but failed to pay.[4] Plaintiffs' motion for summary judgment as to Envision's breach of contract claim is thus denied.

## VII. Envision's Unjust Enrichment Claims

In the alternative to its breach of contract claim, Envision alleges an unjust enrichment claim against Plaintiffs in connection with the services it provided in facilitating the 2013 Transaction. It also alleges a separate unjust enrichment claim against Plaintiffs in connection with various services it provided in facilitating transactions with U.S. retailers other than Walgreens. Plaintiffs argue that Envision is precluded from pursuing claims on an unjust enrichment theory because the parties' relationship was governed by contract.

Under Illinois law, "[w]hen two parties' relationship is governed by contract, they may not bring a claim of unjust enrichment unless the claim falls outside the contract." *Utility Audit, Inc. v. Horace Mann Serv. Corp.*, 383 F.3d 683, 688–89 (7th Cir. 2004). "The reason for prohibiting a claim of unjust enrichment between contracting parties is to prohibit a party whose

---

[4] Plaintiffs briefly argue that Envision cannot prove damages because it admits that it drew down about $3 million from the letters of credit issued by Walgreens in connection with the 2013 Transaction. *See* Envision's LR 56.1(b)(3) Stmt. ¶ 30. This admitted fact, however, does not preclude a jury from finding in Envision's favor on its breach of contract claim. A reasonable jury, for example, could find that Envision is liable to Plaintiffs for the amount drawn down from the letters of credit and that Plaintiffs are simultaneously liable to Envision for the amount of compensation allegedly promised but not paid.

expectations were not realized under the contract from nevertheless recovering outside the contract." *Id.* at 689. A claim falls within the scope of the parties' contract if the contract and the claim address the "same subject matter." *Indus. Lift Truck Serv. Corp. v. Mitsubishi Int'l Corp.*, 432 N.E.2d 999, 1002 (Ill. App. Ct. 1982); *accord Utility Audit*, 383 F.3d at 688–89.

In applying this rule, "Illinois courts have read the phrase 'same subject matter' broadly." *Stevens v. Interactive Fin. Advisors, Inc.*, No. 11 C 2223, 2015 WL 791384, at *16 (N.D. Ill. Feb. 24, 2015) (citing *Indus. Lift*, 432 N.E.2d at 1002–03). As such, even where a contract does not address a specific service to be rendered by one of the parties, the contract's existence precludes an unjust enrichment claim based upon the benefits conferred by the service as long as the contract generally governs the parties' business relationship. *See Indus. Lift*, 432 N.E.2d at 1002–03 (contract governing relationship between truck seller and distributor covered the same subject matter as unjust enrichment claim seeking compensation for product design services, even though product design services were not specifically addressed in the contract); *Stevens*, 2015 WL 791384, at *16–17 (contract governing relationship between financial advisor and its employee covered the same subject matter as unjust enrichment claim seeking compensation for financial advisor's client accounts, even though ownership of client accounts was not specifically addressed in the contract).

Here, it is undisputed that the business relationship between Plaintiffs and Envision was governed by a contract—namely, by the parties' compensation agreement.[5] Envision's LR 56.1(b)(3) Stmt. ¶ 9. Under the terms of this agreement, Plaintiffs paid Envision a $10,000

---

[5] By contrast, as noted *supra*, it remains disputed whether the business relationship between Plaintiffs and Walgreens was likewise governed by a contract. Because the existence of such a contract is disputed, Plaintiffs' breach of contract claim and unjust enrichment claim against Walgreens may both proceed at this stage. At trial, however, if the jury finds that Plaintiffs' and Walgreens's business relationship was indeed governed by a contract, Plaintiffs will be precluded as a matter of law from prevailing on their unjust enrichment claim against Walgreens. *See Utility Audit*, 383 F.3d at 688–89.

annual fee and a commission for its services in facilitating sales of Plaintiffs' merchandise to U.S. retailers. *Id.* ¶ 10. In addition, Plaintiffs reimbursed Envision for the costs of product samples, courier charges, hotel fees in Asia, and third-party translation services. *Id.*

The parties' agreement and Envision's unjust enrichment claims address the same subject matter—namely, the compensation that Envision was to be paid in exchange for the services it provided in facilitating the sale of Plaintiffs' goods to U.S. retailers. It is true that the undisputed terms of the agreement do not address the narrower subject of Envision's product development, trend tracking, artwork creation, and database management services, which are the specific basis of Envision's unjust enrichment claims. Nevertheless, the parties' compensation agreement generally governs their business relationship, and the agreement's existence therefore precludes Envision from pursuing its unjust enrichment claims. *See Indus. Lift*, 432 N.E.2d at 1002–03. Plaintiffs' motion for summary judgment as to both of Envision's unjust enrichment claims is accordingly granted.[6]

---

[6] In its response brief, Envision has requested leave to file a Fourth Amended Counterclaim in the event that Plaintiffs' motion for summary judgment is granted as to Envision's unjust enrichment claim for services provided in connection with sales of goods to U.S. retailers other than Walgreens. In particular, Envision seeks to replead a breach of contract claim in connection with these services. *See* Envision's Resp. at 15. Envision pleaded such a claim earlier in this litigation. *See* Am. Counterclaim ¶¶ 59–78. Over two years ago, the Court dismissed the claim without prejudice on the ground that Envision failed to sufficiently allege the terms of the contract on which the claim was based. *Sunny Handicraft Ltd. v. Envision This!, LLC*, No. 14-CV-1512, 2015 WL 231108, at *6 (N.D. Ill. Jan. 16, 2015). Since then, the Court has twice granted Envision leave to file amended counterclaims; in its two rounds of subsequent amended pleadings, Envision explicitly noted that it opted not to replead the previously dismissed breach of contract claim. *See* 2d Am. Counterclaim at 9, ECF No. 68; 3d Am. Counterclaim at 9.

District courts have broad discretion to deny leave to amend where there is undue delay, repeated failure to cure deficiencies, or undue prejudice to the opposing party. *Johnson v. Cypress Hill*, 641 F.3d 867, 872 (7th Cir. 2011). Envision has had ample opportunity to replead a breach of contract claim with respect to U.S. retailers other than Walgreens, but it deliberately chose not to do so. Moreover, allowing Envision to amend its counterclaims now—at the summary judgment stage and long after the close of fact discovery—would be unduly prejudicial to Plaintiffs. Envision's request for leave to amend is therefore denied.

**VIII. Tortious Interference with Economic Advantage**

Next, Envision brings a counterclaim against Plaintiffs for tortious interference with economic advantage, alleging that Plaintiffs have injured its business relationships with Walgreens and other U.S. retailers.  As the basis for this claim, Envision alleges that "no later than early August 2013, Sunny Handicraft maliciously began a concerted effort to interfere with Envision's business relationship with Walgreens and other United States retailers by causing shipping delays and shipping inferior products to these United States retailers."  3d Am. Counterclaim ¶ 117.

To prevail on a claim for tortious interference with economic advantage, Envision must show that (1) it reasonably expected to enter into a valid business relationship, (2) Plaintiffs had knowledge of this expectancy, (3) Plaintiffs intentionally and unjustifiably interfered in a way that caused a breach or termination of the expectancy, and (4) Envision suffered damage as a result of Plaintiffs' conduct.  *F:A J Kikson v. Underwriters Labs., Inc.*, 492 F.3d 794, 800 (7th Cir. 2007); *Voyles v. Sandia Mortg. Corp.*, 751 N.E.2d 1126, 1133 (Ill. 2001).  To satisfy the first element of this claim, Envision must "specifically identify the customers who actually contemplated entering into a business relationship with [Envision]."  *Instant Tech., LLC v. DeFazio*, 40 F. Supp. 3d 989, 1020 (N.D. Ill. 2014) (internal quotation marks omitted).  And to establish the third element, Envision must show that Plaintiffs directed their allegedly wrongful conduct to a third party and acted with the purpose of injuring Envision's expectancies.  *F:A J Kikson*, 492 F.3d at 800; *J. Eck & Sons, Inc. v. Reuben H. Donnelley Corp.*, 572 N.E.2d 1090, 1093 (Ill. App. Ct. 1991).  Envision must also establish a causal connection between its injury and Plaintiffs' wrongful conduct.  *See Botvinick v. Rush Univ. Med. Ctr.*, 574 F.3d 414, 417–18 (7th Cir. 2009).

## A.      Expectation of Future Business Relationship with Walgreens

Plaintiffs lodge three primary arguments in seeking summary judgment on Envision's tortious interference claim, to the extent the claim is premised upon Envision's expectation of a future business relationship with Walgreens.   First, Plaintiffs argue that Envision has not produced evidence to show its expectation of a future business relationship was reasonable.   But this argument is without merit.   Envision has, in fact, produced evidence suggesting that, during 2013, it was in negotiations with Walgreens for the future sale and shipment of Halloween-related merchandise for the 2014 season.   Envision's LR 56.1(b)(3) Stmt. ¶ 52.   Based on this evidence, a reasonable jury could find that Envision had a reasonable expectation of a future business relationship with Walgreens.   *See Peoria Day Surgery Ctr. v. OSF Healthcare Sys.*, No. 06-1236, 2009 WL 5217344, at *10 (C.D. Ill. Dec. 30, 2009) (finding genuine issue of material fact as to plaintiff's reasonable expectation of business relationship where plaintiff produced evidence that potential business partner had considered entering an agreement with plaintiff).

Second, Plaintiffs argue that Envision has failed to produce evidence showing that Plaintiffs acted with the purpose of injuring Envision's expectation of future business with Walgreens.   In response, Envision points to evidence suggesting that Plaintiffs harmed its relationship with Walgreens by refusing to timely provide necessary shipping documents, as well as by telephoning Hasan in a manner contrary to industry custom on August 20, 2013.   *Id.* ¶¶ 35–36, 40.   Envision argues that a reasonable jury could infer Plaintiffs' intent to injure Envision's expectation of future business from the nature of this conduct, taken together with Plaintiffs' refusal to share the password to the freight forwarding system with Envision.   *See id.* ¶¶ 35–36, 38–40.   Typically, the issue of intent is a highly fact-intensive question inappropriate for resolution at the summary judgment stage.   *See, e.g.*, *Chamberlain Grp., Inc. v. Lear Corp.*, 756 F. Supp. 2d 938, 975 (N.D. Ill. 2010).   And it is the task of the jury, not the Court, to weigh the

evidence and make credibility determinations in deciding such factual questions. *See McCann*, 622 F.3d at 752. For these reasons, the Court concludes that Envision is entitled to present its circumstantial evidence of Plaintiffs' intent to a jury.

Lastly, Plaintiffs contend that Envision cannot prove Plaintiffs' phone call and shipping delays caused Walgreens to cease doing business with Envision. According to Plaintiffs, Walgreens's decision to terminate its relationship with Envision was instead caused by Walgreens's receipt of a letter on November 27, 2013, in which Plaintiffs' lawyers informed Walgreens of Plaintiffs' business disputes with Envision. *See* Pls.' Mem. Supp. at 17, ECF No. 152 (citing Pls.' LR 56.1(a)(3) Stmt. ¶¶ 46–48). Envision denies that the letter from Plaintiffs' lawyers was the basis for Walgreens's decision. Envision's LR 56.1(b)(3) Stmt. ¶¶ 47–48. Rather, it insists that Walgreens's decision was based upon "Sunny's shipping delays, Sunny's direct contact with Ms. Hasan contrary to normal business practices, and Sunny demanding payment from Walgreens." *Id.* In support, Envision cites testimony from Hasan's deposition, in which Hasan stated that the "whole circumstance[s]" unfolding in 2013 "changed [Walgreens's position] in moving forward with [Envision and Sunny]" going into 2014. *Id.*, Ex. G, 250:17–21. In addition, Hasan stated that "[she] was clear from August [2013]" that Walgreens would not be "interested in playing, working or dealing" if the problems with Sunny and Envision "escalated or became more." *Id.* at 258:3–21.

In reviewing Plaintiffs' motion for summary judgment, the Court must make reasonable inferences in Envision's favor. *Grochocinski*, 719 F.3d at 794. Based on the evidence Envision has offered, the Court cannot say that it would be unreasonable for a jury to infer that Plaintiffs' phone call and shipping delays influenced Walgreens's decision to cease doing business with Envision. To the contrary, a jury could conclude that Plaintiffs' phone call and shipping delays

were part of the "whole circumstance[s]" that "changed [Walgreens's position] in moving forward" with its business plans with Envision. Envision's LR 56.1(b)(3) Stmt., Ex. G, 250:17–21. As such, Envision is entitled to proceed with its tortious interference claim, to the extent that it is based upon Plaintiffs' alleged interference with Envision's business relationship with Walgreens.

### B. Expectation of Future Business Relationships with Other U.S. Retailers

Envision also alleges that Plaintiffs tortiously interfered with its expectation of future business relationships with U.S. retailers other than Walgreens. In responding to Plaintiffs' motion for summary judgment, however, Envision has not offered any evidence to show that Plaintiffs have intentionally engaged in any conduct with the purpose of interfering with Envision's business expectancies vis-à-vis such retailers.[7] The Third Amended Counterclaim alleges that Plaintiffs "maliciously" interfered with these expectancies by "causing shipping delays and shipping inferior products." 3d Am. Counterclaim ¶ 117. But Envision is not entitled to rest upon the allegations in its pleadings at the summary judgment stage. *Celotex*, 477 U.S. at 324; *Springer v. Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008).

Without evidence that Plaintiffs intentionally delayed shipments, shipped inferior products, or directed any other purportedly wrongful conduct at U.S. retailers other than Walgreens, Envision cannot prove the third element of a tortious interference claim. *F:A J Kikson*, 492 F.3d at

---

[7] In its response to Plaintiffs' Local Rule 56.1(a)(3) Statement, Envision asserts that Plaintiffs "shipped poor quality merchandise" to The Home Depot and Family Dollar Store in order to "blame Envision and cut Envision out of its relationship" with these retailers. Envision's LR 56.1(b)(3) Stmt. ¶¶ 57, 63. But the only evidence it cites in support of these bald assertions are passages from Huang's deposition testimony that do not address whether Plaintiffs ever shipped low-quality goods. *Id.* (citing Envision's LR 56.1(b)(3) Stmt., Ex. B, 202:3–8, 203:4–12, 211:13–23). No reasonable jury could conclude from this evidence that Plaintiffs shipped low-quality goods to The Home Depot, Family Dollar Store, or other U.S. retailers, much less that they did so intentionally and with the purpose of injuring Envision's future business relationships with them.

800. Thus, to the extent this claim is based upon Plaintiffs' alleged interference with Envision's business relationships with U.S. retailers other than Walgreens, the claim may not proceed.

## IX. Breach of Implied Warranty of Merchantability

Finally, Envision brings a counterclaim against Plaintiffs for breach of implied warranty of merchantability. This claim is based upon Plaintiffs' alleged shipment of low-quality goods to U.S. retailers such as The Home Depot and the Family Dollar Store. 3d Am. Counterclaim ¶¶ 158–68. Plaintiffs argue that Envision cannot prevail on this claim as a matter of law because Envision was not the purchaser of the goods in question and thus was not in privity with Plaintiffs.

To prevail on a claim for breach of implied warranty of merchantability under Illinois law, a plaintiff must show that "(1) the defendant sold goods that were not merchantable at the time of sale; (2) the plaintiff suffered damages as a result of the defective goods; and (3) the plaintiff gave the defendant notice of the defect." *Baldwin v. Star Sci., Inc.*, 78 F. Supp. 3d 724, 741 (N.D. Ill. 2015). In addition, Illinois law generally requires a party seeking to recover economic damages for breach of implied warranty of merchantability to be in privity of contract with the seller of the goods in question. *Voelker v. Porsche Cars N. Am., Inc.*, 353 F.3d 516, 525 (7th Cir. 2003) (citing *Rothe v. Maloney Cadillac, Inc.*, 518 N.E.2d 1028, 1029–30 (Ill. 1988)); *Bd. of Educ. of City of Chi. v. A, C & S, Inc.*, 546 N.E.2d 580, 595 (Ill. 1989). Illinois courts have carved out various exceptions to this privity requirement, such as in cases where a manufacturer extends a written warranty, a consumer brings an action against a manufacturer under the Magnuson-Moss Act, or the party seeking to recover damages suffered personal injury. *See Shoop v. DaimlerChrysler Corp.*, 864 N.E.2d 785, 792 (Ill. App. Ct. 2007); *Bd. of Educ. of City of Chi.*, 546 N.E.2d at 595–96.

Envision does not dispute that it was not the buyer of the goods in question or that it was not in privity with Plaintiffs with respect to the sale of those goods. *See* Envision's Resp. at

18–19; Envision's LR 56.1(b)(3) Stmt. ¶¶ 53–55, 60. Instead, it argues only that it may recover on a theory of breach of implied warranty as a third-party beneficiary of Plaintiffs' sales contracts with The Home Depot and Family Dollar Store. In effect, Envision asks the Court to find an exception to the privity requirement for third-party beneficiaries and to apply that exception in the present case.

In seeking to establish an exception for third-party beneficiaries, Envision cites *Crest Container Corp. v. R.H. Bishop Co.*, 445 N.E.2d 19 (Ill. App. Ct. 1982), and *Chrysler Corp. v. Haden Uniking Corp.*, No. 91 C 20326, 1992 WL 373039 (N.D. Ill. Dec. 3, 1992). In each of these cases, the court relaxed the privity requirement for the purpose of permitting an end consumer to recover against a manufacturer where the consumer had purchased the manufacturer's goods from a dealer, rather than purchasing the goods directly from the manufacturer itself. *Crest*, 445 N.E.2d at 25; *Chrysler*, 1992 WL 373039, at *8–9. Although these cases describe end consumers as "third-party beneficiaries," they do not stand for the proposition that *any* third-party beneficiary—that is, anyone who benefits from the existence of a contract to which he is not a party—may recover in an action for breach of implied warranty. Rather, these cases stand only for the more limited proposition that a third-party beneficiary may recover for breach of implied warranty where he is a consumer at the end of a supply chain who seeks to recover from a remote manufacturer. *See Crest*, 445 N.E.2d at 25 (holding that an exception to the privity requirement exists where a dealer's customer seeks to recover against a remote manufacturer); *Chrysler*, 1992 WL 373039, at *8–9.

Envision is not—and does not claim to be—an end consumer of Plaintiffs' goods. Instead, it claims to be a third-party beneficiary merely because Plaintiffs' sales contracts with The Home Depot and Family Dollar Store happened to give rise to additional business

opportunities for Envision. Envision's reliance on *Crest* and *Chrysler* is therefore unpersuasive. In turn, because Envision does not satisfy the privity requirement, it cannot prevail against Plaintiffs on a theory of breach of implied warranty of merchantability. *See Voelker*, 353 F.3d at 525. Plaintiffs' motion for summary judgment as to this claim is thus granted.

## Conclusion

For the reasons stated herein, Walgreens's motion for summary judgment [164] is denied. Envision's motion for partial summary judgment [161] is granted with respect to Plaintiffs' claim for defamation *per quod* (Count VIII). Plaintiffs' motion for partial summary judgment [151] is granted with respect to Envision's claims for unjust enrichment (Counterclaims II and IV), breach of implied warranty of merchantability (Counterclaim VI), and defamation *per quod* (Counterclaim VIII). Plaintiffs' motion is also granted with respect to Envision's claim for tortious interference with economic advantage (Counterclaim V), to the extent that this claim is based upon Plaintiffs' alleged interference with Envision's business relationships with U.S. retailers other than Walgreens. In all other respects, Envision's and Plaintiffs' respective motions for partial summary judgment are denied. A status hearing will be held at 9:15 a.m. on April 6, 2017, at which point the parties should be prepared to set deadlines for pretrial filings, a date for the pretrial conference, and a date for trial.

**IT IS SO ORDERED.**                    **ENTERED   3/24/17**

_____
**John Z. Lee**
**United States District Judge**